
IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| BENNY STEWART, | Cause No. CV 15-36-BU-DLC-JCL |
| Petitioner, | |
| vs. | FINDINGS AND RECOMMENDATIONS OF MAGISTRATE JUDGE |
| TOM GREEN, ATTORNEY GENERAL OF THE STATE OF MONTANA, et. al., | |
| Respondent. | |

Petitioner Benny Stewart, appearing pro se, seeks habeas corpus relief

pursuant to 28 U.S.C. § 2254. Mr. Stewart challenges the fifty-year prison

sentence, with twenty years suspended, he received in the Second Judicial District

Court, Silverbow County, Montana. Mr. Stewart's petition should be denied for

lack of merit.

**A. Procedural Background**

Stewart was charged with molesting his daughter over an eleven-year period,

from 1998 to 2009. Following a jury trial, Stewart was convicted of one count of

incest. Following trial, but prior to sentencing, Stewart filed a motion for a new

trial, arguing that the Montana Supreme Court's decision in *State v. Allen*, 2010

1

MT 214, 357 Mont. 495, 241 P. 3d 1045, rendered certain trial evidence,

specifically warrantless phone call recordings between Stewart and his daughter,

inadmissible. *See*, (Doc. 14-32). The State objected arguing that the investigation

in Stewart's case was distinguishable from that of *Allen*. (Doc. 14-36 at 20-22).

Alternatively, the State argued that the law in place at the time the calls were

placed allowed one-party consent for recording and, thus, the exclusionary rule

would not have mandated suppression of the evidence. *Id*. at 22-28. Finally, the

State asserted that even if there was error in admitting the calls into evidence the

error was harmless. *Id*. at 28-31.

The trial court denied Stewart's motion, distinguishing Stewart's behavior in

relation to his expectation of privacy from that of the defendant in *Allen*. (Doc. 14-

37 at 8). The court observed that Stewart participated in the recorded call while his

wife was in a vehicle with him, thus, she was privy to his side of the conversation.

*Id*. Stewart did not attempt to conceal his side of the conversation and, in fact, had

Angelina talk directly to A.S. about the molestation. *Id*. at 9. The trial court also

concluded that the investigating officer's reliance upon pre-*Allen* case law and

procedures was objectively reasonable and he had acted in good faith, thus the

exclusionary rule would not have been applicable to Stewart's case. *Id*. at 12-13.

Finally, the trial court found that, in any event, the admission of the recorded calls

was harmless. *Id*. at 14. The parties proceeded to sentencing; judgment was

entered against Stewart on April 7, 2011. Pet, (Doc. 1 at 2, ¶ 2).

Stewart filed a direct appeal raising two issues: 1) he was entitled to a new trial due to law enforcement's warrantless monitoring and recording of the telephone calls with his daughter; and, 2) the trial court abused its discretion in admitting a series of sexually oriented photographs Stewart took of his daughter. *State v. Stewart*, 2012 MT 317, ¶ 1, 367 Mont. 503, 291 P. 3d 1187.

The Montana Supreme Court found Stewart was entitled to have *Allen* applied to his case. *Id.* at ¶ 31. The Court disagreed with the trial court that Stewart did not have a subjective expectation that his conversation was not being surreptitiously recorded by law enforcement. *Id.* at ¶ 40; citing, *Allen* at ¶ 49. The Court went on to observe that society is willing to recognize the expectation that a private cell phone conversation is not being recorded is reasonable and, thus, the recordings in Stewart's case constituted searches. *Id.* at ¶ 42. Finally, the Court found that because the State failed to identify an exception to the warrant requirement, the search in Stewart's case was unreasonable. *Id.* at ¶ 43. Having determined that Stewart's rights were violated under the Montana Constitution, the Court analyzed whether or not the admission was harmless. Ultimately, the Court held that the admission of the recordings was harmless error because there was ample additional evidence and any "qualitative impact the tainted evidence might have had on the factfinder" was harmless. *Id.* at ¶ 50. The Court also found that

the sexually explicit photos were admissible pursuant to M.R.Evid. 401 and 402 and were not subject to exclusion under Rules 404(b) or 403. *Id.* at ¶¶ 59, 66, 68-70.

Stewart then filed for a writ of habeas corpus. The Montana Supreme Court denied the petition. *Stewart v. Green*, OP 13-660, Or. (Mont. Oct. 22, 2013). Stewart argued that his conviction was facially invalid due to the legislature's failure to define the elements of the crime, specifically what the term "gratify" means in the context of sexual contact. *Id.* at 1. Stewart argued that this failure violated his right to equal protection and due process of law. *Id.* He also argued that because his incarceration arose from an invalid statue, his sentence was unenforceable. *Id.* at 2. The Court found the case law upon which Stewart relied was inapplicable to his case and denied his petition. *Id.* at 2-3.

Stewart proceeded to file a petition for postconviction relief claiming ineffective assistance of both trial and appellate counsel. (Doc. 14-43). Stewart also reiterated his arguments relating to the legislature's failure to define the term "gratify," "regularly," and "resides" in the Montana Code. *Id.* at 2-5.

Ultimately, Stewart's petition for postconviction relief was denied at the trial court level, and the denial was affirmed by the Montana Supreme Court. *Stewart v. State*, DA 14-0347, 2015 MT 135N, Or. (Mont. May 19, 2015). On appeal, Stewart argued that he should have been afforded the opportunity to amend his

petition and that he had arguments that he intended to raise with the assistance of counsel. Because he was denied counsel, Stewart contended he was prevented from fairly presenting those arguments. *Id.* at 2-3. But, the Court held that the post-conviction court was under no obligation to inform Stewart of the deficiencies in his petition or to develop his legal arguments for him. *Id.* at 3. Additionally, the Court held there was no error committed by not appointing Stewart counsel; he had no right to appointed counsel in postconviction. *Id.* at 4, citing M.C.A. § 46-21-201.

Stewart also argued that both trial and appellate counsel were ineffective for failing to object to the term "gratifying" as contained in the incest statute, § 45-5-507, M.C.A., and that counsel failed to challenge the term "regularly resides" as contained in the Sexual or Violent Offender Registration Act (SVORA) §§ 46-23-501, *et. seq.*, MCA. *Id.* at 4. The Court applied the two-part test enunciated in *Strickland v. Washington,* 466 U.S. 668 (1984), to Stewart's claims. *Id.* at 5, ¶ 9.

The Court noted that the incest statute follows the definition of "sexual intercourse" located at § 45-2-101(68) M.C.A. which "means penetration...by another person to knowingly or purposely...arouse or gratify the sexual response or desire of either party." *Id.* at ¶ 10. The Court also observed that "regularly resides" was incorporated in the definition of "residence" under the SVORA, wherein " 'Residence' means the location at which a person regularly resides,

regardless of the number of days or nights spent at that location, that can be located by a street address, including a house, apartment building, motel, hotel, or recreational or other vehicle." *Id.* citing, § 46-23-502(7)(a), MCA. The Court observed that words used in statues are to be construed according to their context and normal usage, absent an acquired peculiar or technical meaning. In relation to the Criminal Code, "[a]ll its provisions are to be construed according to the fair import of their terms with a view to effect its object and to promote justice." *Id.* at ¶ 11, citing § 45-1-102(2), MCA.

The Court agreed with the trial court's holding that both terms "gratify" and "regularly resides" were self-explanatory and that counsel's failure to object at either trial or on appeal did not constitute ineffective assistance. *Id.* at ¶ 12. The Court observed that neither term had acquired a particular or technical meaning and that because Stewart failed to meet the first prong of *Strickland*, his claim of ineffective assistance failed. *Id.*

In relation to the term "gratify" Stewart attempted to argue that the lack of precise definition resulted in the prosecution lacking sufficient evidence to convict. *Id.* at ¶ 13. Stewart's argument seemed to be that without a precise definition, the prosecution could not prove it as an element of the crime of incest pursuant to M.C.A. § 45-5-507. The Court was not persuaded finding that the jury had sufficient evidence to convict and that Stewart presented no new evidence to

6

challenge his conviction or support his petition pursuant to § 46-21-102(2), MCA.
*Id.*

Stewart also claimed that he received an illegal sentence because he was a "non-violent" offender. The Court found that by virtue of his conviction of incest, Stewart was considered a violent offender for the purpose of sentencing. *Id.* at ¶ 14, *citing* § 46-18-104(2)(a)(iii)(C), MCA. Because the victim of the offense was under the age of 12 and Stewart was over the 18 when the abuse began, the sentence was within the statutory parameters of MCA § 45-5-507(5) and was, therefore, a legal sentence. *Id.*

Stewart raised additional issues, including a challenge to the trial court's jurisdiction, procedural errors, and unsupported constitutional claims, for the first time on appeal. The Court declined to address these issues. *Id.* at ¶ 15. Similarly, Stewart raised alternative arguments in his reply brief that the Court did not consider under M.R. App.P. 12(3). *Id.* The trial court's denial of Stewart's petition was affirmed in all aspects.

### B. Stewart's Claims

In his petition, Stewart raises ten claims: 1) the wiretap installed on Stewart's home phone line, was done so without a warrant in violation of the Federal Wiretap Act and constituted an illegal search (doc. 1 at 4); 2) the search warrant used to access Stewart's home did not encompass computers and cameras,

7

thus, the search of these items was illegal in violation of the Fourth Amendment (*id.* at 5); 3) the search warrant used to search Stewart's home was overly broad and was extended to his vehicle, resulting in an illegal search and seizure (*id.* at 6); 4) The search warrant and supporting documents were not filed in the district court, the failure to file violates state and federal law and renders the warrant invalid (*id.* at 7); 5) Stewart was denied a grand jury and probable cause hearing in violation of the Fifth Amendment (*id.* at 8); 6) the trial judge unreasonably applied the rape shield law in order to preclude evidence that would have weakened the state's case and prevented Stewart from confronting his accuser in violation of the Sixth and Fourteenth Amendments (*id.* at 9); 7) Stewart's wife was unlawfully called as a witness in violation of the Marital Communication Clause (*id.* at 10); 8) the prosecution unlawfully withheld *Brady* information from Stewart in violation of the Fourteenth Amendment (*id.* at 11); 9) Trial counsel was ineffective for failing to correct these constitutional violations and appellate counsel was ineffective for failing to correct the violations on appeal (*id.* at 12); 10) Stewart's due process and equal protection rights were denied when he was not allowed to amend his postconviction petition (*id.* at 13).

## C. Analysis

While the bulk of Stewart's claims are likely procedurally defaulted, it is more efficient to proceed to the merits. *See* 28 U.S.C. § 2254(b)(2); *Lambrix v.*

*Singletary*, 520 U.S. 518, 525 (1997).

**Claim 1- Federal Wiretap Act/Fourth Amendment**

Stewart references the "Federal Wiretap Act" and argues that the wiretap installed on his phone constituted an illegal search. While it is true that interceptions of wire, oral and electronic communications under federal law are governed by Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended, 18 U.S.C. §§ 2510-2522, federal law was not at play in Stewart's case. He was prosecuted by the State of Montana. Moreover, there was no wiretap; Detective Lester surreptitiously recorded the conversation with A.S.'s consent. Under federal constitutional and statutory law, no warrant is necessary to surreptitiously record a conversation as long as one of the two parties to the conversation consents to the recording. *See* 18 U.S.C. § 2511(2)(c); *see also United States v. White*, 401 U.S. 745, 748-54 (1971); *Armstrong v. Asselin*, 734 F. 3d 984, 989 (9th Cir. 2013). Testimony at trial established that A.S. was working with Detective Lester when the four phone calls were recorded. Under federal law, no warrant was required and, thus, no violation occurred.

To the extent that Stewart claims a Fourth Amendment violation, the Montana Supreme Court acknowledged that the warrantless search that occurred in Stewart's case amounted to a violation of Stewart's rights, but went on to reason that the admission of the recorded calls, in light of the additional evidence

9

presented, was harmless. *State v. Stewart*, 2012 MT at 317, at ¶ 50. The Court

noted that the admissible additional evidence included: A.S.'s testimony that

Stewart first touched her vagina at age 7, that the sexual contact continued on a

regular basis for the following 11 years, that Stewart performed oral sex on her,

that Stewart forced A.S. to perform oral sex on him, and that he treated her "more

like a lover than a daughter." *Id*. at ¶ 48. A.S.'s brother, J.S., testified that

Stewart: showed him a photo of A.S. performing oral sex on Stewart when A.S.

was 13 or 14 years old, massaged A.S.'s breasts and crotch during family movie

nights, and disclosed fantasies he had about A.S. and his desire to "bang her." *Id*.

Angelina Stewart testified that her husband admitted to "going down" on A.S.

which she took to mean he had performed oral sex on their daughter. *Id*. In

addition, the photographs which Stewart took of A.S. over the years, including

provocative and lewd photos, were presented to the jury. *Id*. at ¶ 50. Thus, the

Montana Supreme Court reasoned that any qualitative impact the telephone

recordings had on the fact-finder was harmless. *Id*.

This decision constitutes an adjudication on the merits, thus the highly

deferential standard of 18 U.S.C. § 2254(d) is at play. *Harrington v. Richter*, 562

U.S. 86, 103 (2011). Stewart is not entitled to habeas relief if the error was

harmless. In habeas proceedings, the actual prejudice standard set forth in *Brecht*

*v. Abrahamson*, 507 U.S. 619 (1993), is to be applied. Under *Brecht*, habeas relief

is only available if the constitutional error had a "substantial and injurious effect or influence" on the jury verdict or trial court decision. *Id.* at 623. This standard is satisfied if the record raises "grave doubts" about whether the error influenced the jury's decision. *Davis v. Ayala,* __ U.S. __, 135 S. Ct. 2187, 2203 (2015) (quotations omitted). This Court's review of the record, certainly demonstrates that there was ample evidence from which a jury could determine that Stewart engaged in ongoing incestuous conduct with A.S., the recorded calls notwithstanding. Stewart has presented nothing to this Court that would establish that the introduction of the recorded phone calls had a substantial influence upon the jury's verdict. The claim lacks merit.

### Claims 2, 3, and 4- Legality of Search Warrant

The Fourth Amendment provides "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Generally, claims challenging the legality of search warrants via habeas relief are barred by the Supreme Court's holding in *Stone v. Powell*, 428 U.S. 465 (1976). In *Stone*, the Court held "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that the evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 494.

Stewart argues that there was no search warrant that allowed for law enforcement to open and search data contained on the computers and cameras. Stewart contends that an illegal search of the contents of the computer and camera violated the Fourth Amendment and the evidence should not have been introduced at trial. Stewart claims the warrant was overly broad and did not provide for the search of his vehicle. Finally, he contends that because the warrant was not filed in the district court file, the warrant was illegal.

As an initial matter, while Stewart's trial counsel chose not to mount any challenge to the search warrant and subsequent seizure of various items, there is no indication that he was denied the opportunity to do so. In fact, in the Omnibus Memorandum defense counsel filed on behalf of Stewart, he reserved the right to file suppression motions. (Doc. 14-12 at 2, ¶ 6). While no suppression motion was filed relative to the search warrant, Stewart's trial counsel did seek to prevent the admission, via a motion in limine, of the following: the photographs Stewart took of A.S., a twenty-four page writing detailing an incestuous relationship which was recovered from one of the computers, and various search terms related to incest recovered from the computers. (Doc. 23). Because Stewart was given the full opportunity to challenge this information, the claim is foreclosed by *Stone*.

While only one search warrant and associated documentation was filed in the record before this Court (docs. 17-1 and 17-2), it appears that a second search

warrant was sought and ultimately granted, allowing the State to obtain a forensic analysis of the computers and cameras that were seized. *See*, Br. in Opp. Of Mot. For New Trial (Doc. 14-36 at 5)("An additional search warrant was applied for and granted by the Court allowing a forensic search of the (3) computers and the two (2) cameras."). Thus, Stewart's belief that there was no warrant allowing the State to search the contents of the computers and cameras is incorrect.

Moreover, it is apparent that Stewart, through counsel, assented to this forensic analysis. In fact, Stewart filed a motion to continue the original trial date "for the reason that the Defense has not yet received the computer and camera forensic test results from the State, and given the fact that they may contain exculpatory evidence, the Defense needs additional time to receive these results, analyze them, and prepare for trial." (Doc. 12-21 at 1-2).

In relation to Stewart's contention that his vehicle was unlawfully searched, it appears there was a typographical error in the handwritten receipt that was issued following the search and seizure of items from Stewart's home, but was corrected on the printed version of the Return on Search Warrant. Compare, (doc. 17-2 at 3) (introductory paragraph referencing "vehicle") with (doc. 17-2 at 4) (reference made to "residence"). This typographical error does not amount to a constitutional violation.

Finally, Stewart contends that because the warrant was not filed with the

district court the warrant was illegal. There is no constitutional requirement

mandating warrants be lodged in the district court's criminal file. In conducting

habeas review, this Court is limited to deciding whether there was a violation of

the Constitution or law or treaties of the United States. 28 U.S.C. § 2241; *Estelle*

*v. McGuire*, 502 U.S. 62, 68 (1991). Because Stewart has not established a

violation of federal law in relation to his search warrant claims, they should be

denied.

### Claim 5- Indictment by Grand Jury

Stewart next alleges that his right to due process was violated when he was

denied the Fifth Amendment's "guarantee of the minimum level of probable cause

determination to convey jurisdiction to a state district court to preside over any

specific felony case." (Doc. 1 at 8). Stewart compares the charging process

employed by the state court to that of "a dictator." *Id*.

As the record reveals, the State sought an Application for Leave to File an

Information by Affidavit. (Doc. 14-2). The trial court found probable cause and

granted the State's application. (Doc. 14-3). The Information was then filed in the

Second Judicial District Court and Stewart was ordered to appear for arraignment

on the charge. (Docs. 14-4; 14-5). There was no impropriety in the manner in

which Stewart was charged; the procedure complied with the Article II, section 20

of the Montana Constitution and Montana charging statutes. *See*, Mont. Code

Ann. §§ 46-11-101; 46-11-201. Moreover, a judicial probable cause hearing is not a prerequisite to prosecution by information as "the Constitution does not require an adversary determination of probable cause...[t]here is no single preferred pretrial procedure, and the nature of the probable cause determination usually will be shaped to accord with a State's pretrial procedure viewed as a whole." *Gerstein v. Pugh*, 420 U.S. 103, 123 (1975). This claim is frivolous and wholly lacking in merit.

### Claim 6- Application of the Rape Shield Law

Stewart argues his Sixth Amendment right to confront his accuser was violated by the trial court's unreasonable application of the rape shield law. (Doc. 1 at 9). Stewart wished to cross-examine his son, J.S., regarding sexual contact he alleged occurred between J.S. and A.S. *Id.* This topic was the subject of a hearing outside the presence of the jury prior to J.S. taking the witness stand. *See generally*, (Doc. 14-29 at 239- 250).

Montana's Rape Shield statute provides: "Evidence concerning the sexual conduct of the victim is inadmissible in prosecutions under this part except evidence of the victim's past sexual conduct with the offender or evidence of specific instances of the victim's sexual activity to show the origin of semen, pregnancy, or disease that is at issue in the prosecution." M.C.A. § 45-5-511(2). The statute further provides that if the type of evidence described is proposed by

the defense, the trial judge is to hold a hearing outside the presence of the jury to determine whether the proposed evidence is admissible. M.C.A. 45-5-511(3).

Defense counsel made an offer of proof wherein he expressed his belief the evidence would show two separate instances of sexual conduct between A.S. and her brother, as well as one incident between A.S. and her mother, Angelina. (Doc. 14-29 at 239-241). The first incident took place sometime in 2001. Stewart and Angelina apparently found A.S. and J.S. naked in bed together on the verge of engaging in sexual intercourse. *Id*. at 239-240. The next incident occurred at an unspecified time. It was alleged J.S. engaged in "some sort of conduct" with A.S. that defense counsel thought may have involved J.S. sucking on A.S.'s breasts. *Id*. at 240. The defense theorized that both of these events would be fair game for cross-examination of J.S. because they could potentially explain the internet browsing activity, *i.e.* J.S.'s interest in the topic of incest, and J.S.'s apparent motive to lie in stating he was not the one looking at pornographic and incest-related websites. *Id*. The defense explained that the intent was not to impeach A.S., but rather to impeach J.S. *Id*. at 241.

The final event the defense sought to introduce, although not discussed in any detail, apparently involved Angelina fondling A.S. at some point during the 11-year time period that Stewart was alleged to have molested A.S.. *Id*. at 241. Defense counsel did not explain the theory of admissibility relative to this incident.

The State objected to of this line of questioning based upon Montana's Rape

Shield statute as well as Montana Supreme Court case law and had prepared a trial

brief on the issue. *Id.* at 244-245.

Ultimately, the trial court determined the evidence to be inadmissible. First

the court reasoned that the defense could inquire into the possibility of J.S. being

responsible for the computer searches with the State's computer expert and by

asking J.S. directly, without bringing up the alleged acts between J.S. and A.S. *Id.*

at 243. The court went on to find that the proposed evidence did not fall into an

exception of the rape shield statute. *Id.* at 247. The trial court observed that the

statute was not an absolute bar and that in limited circumstances such evidence

could come in, but only after the court engaged in a balancing test, weighing the

victim's rights against the defendant's right to present a defense and receive a fair

trial. *Id.* In making this analysis in Stewart's case, the court found the 2001

incident between J.S. and A.S. to be remote in time and, because it was at the

beginning of the period of charged incestuous conduct, not pertinent to the jury's

determination regarding whether or not Stewart had an incestuous relationship with

A.S. *Id.* at 247-48. The court also reasoned that the defense had other avenues

available for cross-examination of J.S., and of the State's computer expert. *Id.* at

248. The court additionally found the purported conduct between A.S. and

Angelina to be too speculative to overcome the strong public policy underlying the

rape shield statute. *Id.* at 249. The defense was precluded from pursuing the proposed avenues of questioning with either Angelina or J.S. *Id.*

The Sixth Amendment's Confrontation Clause gives the accused "[i]n all criminal prosecutions,...the right...to be confronted with the witnesses against him." The primary purpose of the Confrontation Clause is to ensure a criminal defendant the opportunity to cross-examine witnesses testifying against him. *Delaware v. Van Arsdall*, 475 U.S. 673, 678-79 (1986). However, "[t]he accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinios*, 484 U.S. 400, 409-10 (1988). Additionally, states have latitude under the Constitution to establish rules excluding evidence from criminal trials. *Holmes v. S. Carolina*, 547 U.S. 319, 324 (2006). The Court has also held that a criminal defendant does not have an unconditional constitutional right to introduce evidence of prior sexual conduct of the victim and that the legitimate interests served by state rape shield statutes can justify excluding such evidence. *Michigan v. Lucas*, 500 U.S. 145, 152-53 (1991). The Court noted, however, that such restrictions "may not be arbitrary or disproportionate to the purposes they are designed to serve." *Id.* at 151.

The trial court engaged in the requisite balancing test and properly excluded testimony relating to the alleged sexual contact between J.S. and A.S., as well as

between A.S. and her mother. Considering the relatively weak probative nature of this proffered evidence against the compelling state interests in excluding the evidence, Stewart has not demonstrated that his right to confront his witnesses or present a defense was unconstitutionally hampered. Further, Stewart has not shown that the exclusion by the trial court was arbitrary or disproportionate in relation to the purpose of Montana's rape shield statute. Such exclusion did not run afoul of federal law.

### Claim 7- Marital Communications Privilege

The marital privilege "protects from disclosure private communications between spouses," *U.S. v. Griffin*, 440 F. 3d 1138, 1143-44 (9th Cir. 2006) and may be invoked by the non-testifying spouse. *U.S. v. Marashi*, 913 F. 2d 724, 729 (9th Cir. 1990). There is no indication in the record that Stewart objected to his wife, Angelina, testifying at trial. No motion in limine was filed attempting to preclude this testimony, *see generally* (doc. 14-23), and no objection was made by the defense prior to her trial testimony. (Doc. 14-30 at 361).

The 2009 Montana version of the spousal privilege in effect during Stewart's trial provided:

> Neither spouse may, without the consent of the other, testify during or after the marriage concerning any communication made by one to the other during their marriage. The privilege is restricted to communications made during the existence of the marriage relationship and does not extend to communications made prior to the

19

marriage or to communications made after the marriage is dissolved. **The privilege does not apply to a civil action or proceeding by one spouse against the other or to a criminal action or proceeding for a crime committed by one spouse against the other or against a child of either spouse.**

Mont. Code Ann. § 26-1-802 (2009) (emphasis added). Thus, even if Stewart had attempted to assert his privilege, there was an exception at play under Montana law that would have allowed Angelina's testimony. Specifically, because their child, A.S., was the victim of the crime of which Stewart was accused, Angelina's testimony was admissible.

This exception is consistent with federal law. The Ninth Circuit has recognized two exceptions to the marital communications privilege. The privilege is not extended to statements made in furtherance of joint criminal activity, nor is it applied to statements relating to a crime where a spouse or a spouse's children are the victims. *United States v. Banks*, 556 F.3d 967, 974 (9th Cir. 2009)(internal citations omitted). This claim is without merit.

### Claim 8- *Brady* Violation

Stewart next alleges the prosecution unlawfully held *Brady* information from Stewart in violation of the Fourteenth Amendment. (Doc. 1 at 11). Specifically, Stewart states that the prosecution knew A.S. was working as a prostitute and that she purportedly operated pornographic sites on the internet and that this information was unlawfully withheld so as not to weaken the State's case. *Id.*

20

The due process clauses contained in the Fifth and Fourteenth Amendments require the prosecution in a criminal case disclose any evidence in the government's possession that is favorable to the accused and that is material to either guilt or punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). To establish a constitutional violation under *Brady*, three elements must be met:

1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching;

2) the evidence must have been suppressed by the prosecution, either willingly or inadvertently; and,

3) prejudice must have ensued.

*Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). To establish prejudice under the third prong, the suppressed evidence must be material. *United States v. Bagley*, 473 U.S. 667 (1985). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id*. at 682.

Stewart cannot make a showing under any prong of the *Brady*. Even if it could be shown that A.S. was either working as a prostitute or operating pornographic websites, the admissibility of this evidence is highly questionable. How it is relevant to Stewart's defense of a charge on incest alleged to have occurred over an 11-year period is unclear. Furthermore, Stewart fails to explain how he came to learn of this information, casting additional suspicion upon its

21

veracity.

Under the first prong of *Brady*, this information is not exculpatory in that it could not establish that Stewart did not engage in an incestuous relationship with his daughter. Moreover, from a review of A.S.'s trial testimony, this Court is not able to discern in what way he believes he could have impeached A.S. *See*, (Doc. 14-29 at 166- 206).

There is nothing to indicate that this information, if it existed, was exclusively in the State's possession. Presumably, if A.S. were operating a website, Stewart's defense team, or anyone else for that matter, could have accessed the site and the information contained therein. Stewart has not shown that this purported information was suppressed.

Finally, Stewart cannot establish the materiality of this information. He has not demonstrated that disclosure of the purported evidence would have resulted in a reasonable probability of a different outcome at trial. There was ample evidence against Stewart in the form of witness testimony, photographic evidence, and computer evidence. Furthermore, the jury was able to assess and weigh the credibility of Stewart's own trial testimony. This purported evidence is simply not material to Stewart's case.

### Claim 9- Ineffective Assistance of Trial and Appellate Counsel

Stewart asserts trial counsel was ineffective for failing to address the

purported constitutional violations and that appellate counsel was, in turn, ineffective for failing to raise the violations on appeal. To prevail on an ineffective assistance of counsel claim, Stewart must show (1)that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance is established if Stewart can show that counsel's performance "fell below an objective standard of reasonableness." *Id*. at 688. Because Stewart has not established the existence of a constitutional violation, he cannot show that either trial counsel or appellate counsel acted in an unreasonable manner in failing to challenge a constitutional violation. This claim is without merit.

### Claim 10- Fourteenth Amendment Violation

Finally, Stewart claims that his constitutional rights to due process and equal protection were violated when the trial court and the Montana Supreme Court denied him the ability to amend his postconviction petition.

Neither the Equal Protection Clause nor the Due Process Clause of the Fourteenth Amendment require the states to allow petitioners to amend postconviction petitions. Stewart was able to file a postconviction petition and was not deprived of his right to access the courts. *Lewis v. Casey*, 518 U.S. 343 (1996). Moreover, habeas corpus is not the proper forum to address alleged errors in a state's postconviction review process. *Franzen v. Brinkman*, 877 F. 2d 26, 26 (9th

Cir. 1989)(per curiam); *Williams v. Missouri*, 640 F. 2d 140, 143 (8th Cir.

1981)("Infirmities in the state's post-conviction remedy procedure cannot serve as

a basis for setting aside a valid original conviction.").

Stewart fails to allege any violation of his federal constitutional rights. This

claim should be denied.

### D. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it

enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254

Proceedings. A COA should issue as to those claims on which the petitioner

makes "a substantial showing of the denial of a constitutional right." 28 U.S.C.

2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the

district court's resolution of the constitutional claims" or "conclude the issues

presented are adequate to deserve encouragement to proceed further." *Miller-El*

*Cockrell*, 537 U.S. 322, 327 (2003)(citing *Slack v. McDaniel*, 529 U.S. 473, 484

(2000)).

Mr. Stewart's petition has not met the standard. He has not made the

substantial showing of a denial of a constitutional right and because reasonable

jurists would not disagree with this finding, there is no reason to encourage further

proceedings. A certificate of appealability is not warranted.

### E. Recommendation

1. The Petition (doc. 1) should be DENIED for lack of merit.

2. The Clerk of Court should be directed by separate document to enter a judgment in favor of Respondents and against Petitioner.

3. A certificate of appealability should be DENIED.

## NOTICE OF RIGHT TO OBJECT
## TO FINDINGS & RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Stewart may object to this Findings and Recommendation within 14 days.[1] 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

Mr. Stewart must immediately notify the Court of any change in his mailing address by filing a "Notice of Change of Address." Failure to do so may result in dismissal of this action without notice to him.

DATED this 9th day of August, 2016.

Jeremiah C. Lynch
United States Magistrate Judge

---

[1] As this deadline allows a party to act within 14 days after the Findings and Recommendation is "served," Fed. R. Civ. P. 6(d) applies, and three days are added after the time would otherwise expire.

25